HENRY C. PITNEY, JOHN R. EMERY, FREDERIC W.
STEVENS, MARTIN P. GREY, EUGENE STEVENSON,
JAMES J. BERGEN AND LINDLEY M.
GARRISON, VICE-CHANCELLORS.

---

WILLIAM H. WOGLOM

*v.*

ANNA M. KANT et al.

[Decided May 23d, 1905.]

1. A complainant in a bill, one object of which is the partition of lands, may include therein a question of title to said lands when that question is one for equitable cognizance, and especially when the complainant's claim in that regard is essential to his success in obtaining

relief by partition. Such a bill is not objectionable on demurrer on the ground of misjoinder of causes.

2. A bill seeking partition of lands by the complainant as an heir-at-law of deceased owners thereof disclosed that the title of the deceased owners had been devested in their lifetime by a sale of the land for taxes, which title had been acquired by another heir-at-law, and sought relief against the tax title thus acquired by avoiding it, or by a judicial declaration that it enured to the benefit of complainant and all other of the heirs-at-law on their contributing their just proportion of the burden thereof. Such relief was sought on the ground of fraud. On demurrer thereto for lack of equity—*Held*, (1) that the bill was defective in not stating any facts on which the claim of fraud could be supported, and (2) that this defect was fatal to the whole bill, as complainant's claim for a partition was dependent thereon.

On demurrer to bill.

*Mr. James E. Howell,* for the demurrants.

*Mr. John W. Beekman,* for the complainant.

MAGIE, CHANCELLOR.

The question presented in this case arises upon the joint and several demurrer of Anna M. Kant, the Rahway Savings Institution and Clarence D. Ward, three of the defendants to the bill of complainant.

It appears by the statements of the bill that in October, 1868, Charles F. Martin was the owner of the undivided five-sixths of certain lands lying in Perth Amboy, and that Elizabeth Martin, the sister of Charles, owned the remaining undivided one-sixth thereof, and that Charles F. Martin then died, leaving a last will whereby he devised his interest in said lands to his sister Elizabeth for the term of her natural life, with remainder in fee to another sister named Nancy P. Woglom.

The bill further states that on March 20th, 1897, Nancy P. Woglom died intestate, leaving as her only heirs-at-law her children Anna M. Kant and William H. Woglom, the complainant, and that on the 20th day of March, 1898, Elizabeth Martin died intestate, leaving her surviving no children, but a brother, and nieces and nephews, who are made parties to the bill.

The bill charges that upon the death of Nancy P. Woglom the undivided five-sixths of said lands became vested in complainant and Anna M. Kant as tenants in common, and that upon the death of Elizabeth Martin the one-sixth of said lands became vested in the brother and nieces and nephews of Elizabeth Martin.

Upon the above statements and charges the complainant claims a decree for the partition of said lands, and if nothing else appeared, it is obvious that he would be entitled to maintain this suit.

But the question presented for consideration arises upon further statements in the bill to the effect that on April 22d, 1892, said lands were sold by the city of Perth Amboy for non-payment of taxes and assessments, amounting to the sum of $402.02; that the sale was made to James L. Compton, the collector of revenue of said city, who bought in the lands for the use and benefit of the said city, and that Anna M. Kant, for the purpose of depriving her mother, Nancy P. Woglom, her aunt, Elizabeth Martin, and the complainant of their rights and interests in said lands and securing the title thereto in herself, colluded and conspired with one George A. Seaman, and procured him to purchase from the said city of Perth Amboy the rights it had acquired in said lands by the tax sale for $891.25. At what date this purchase was made or by what it was evidenced is not made to appear, but the bill states that Seaman served notice to redeem upon Nancy P. Woglom and Elizabeth Martin, the notice to Nancy P. Woglom being stated to have been served upon her in the presence of Anna M. Kant, with whom she was then living.

The bill further states that Nancy P. Woglom was at that time eighty-eight years old, infirm, deaf and helpless, and that Elizabeth Woglom, at the time of the service of the notice to redeem, was a very aged, infirm and helpless person over eighty-five years of age.

The bill further states that, in pursuance of the agreement between Seaman and Anna M. Kant, Seaman, about January 14th, 1897, gave a deed to Anna M. Kant for all his rights and interests in the lands for the pretended consideration of $1,125,

and that Anna M. Kant has, since the death of Elizabeth Martin, taken the rents and profits of the premises in question to her own use.

The bill further states that Anna M. Kant, on November 12th, 1902, mortgaged said lands to the Rahway Savings Institution to secure the sum of $4,000, and on the same day mortgaged the same lands to Clarence D. Ward to secure $500, which mortgages are unpaid and are liens. The savings institution and Ward are made parties to the bill, and have joined with Anna M. Kant in this demurrer.

The bill charges that the procurement of the tax title to the lands by Anna M. Kant was a fraud on the rights of her mother and the complainant and other heirs of Elizabeth Martin and Nancy P. Woglom, and thereupon the bill prays that the certificate of sale for taxes given by Compton to Seaman and the deed given by Seaman to Anna M. Kant should be set aside on payment to Anna M. Kant of the proportionate part of said taxes that complainant and the other parties interested in the lands should pay, or that Anna M. Kant should be decreed to hold said lands by virtue of said deed for the benefit of complainant and the other parties.

It is further prayed that if the lands should be found to be incapable of actual partition among the parties that the same may be sold, freed and discharged from the mortgages to the Rahway Savings Institution and to Ward, the amount due upon said mortgages to be paid out of the proceeds of the sale from the share of said Anna M. Kant upon distribution.

The demurrer indicates the following grounds of objection to the bill: *First,* want of equity; *second,* multifariousness or misjoinder of causes of action; *third,* upon the statements of the bill the complainant shows himself to have no title to the lands; *fourth,* the allegations of fraud are insufficient; *fifth,* the Rahway Savings Institution and Ward are *bona fide* mortgagees, against whom the bill makes out no case.

The reason most strongly urged in support of this demurrer is that the bill misjoins causes for relief. The contention is that the claim to set aside and avoid the tax title acquired by

Anna M. Kant cannot be joined with a prayer for relief by partition of the lands which were the subject of the tax sale.

Where, upon a bill for partition of lands, the legal title of the parties thereto is brought into dispute, a court of equity will not proceed to settle that dispute, but will either dismiss the bill or retain it to allow the legal title to be settled in an action at law. But, if upon such a bill the title of any party is disputed on equitable grounds, the legal title not being contested, a court of equity will pass upon and settle that dispute in the partition suit. *Pom. Eq. Jur.* § *1388; Bisp. Pr. Eq.* § *489; Obert* v. *Obert, 12 N. J. Eq. (1 Beas.) 423; Read* v. *Huff, 40 N. J. Eq. (13 Stew.) 229; Vreeland* v. *Vreeland, 49 N. J. Eq. (4 Dick.) 322; Slockbower* v. *Kanouse, 50 N. J. Eq. (5 Dick.) 481.*

The charges of the bill respecting the tax sale and the acquisition of the rights acquired thereby by Anna M. Kant, if they sufficiently present any question of title, present one of an equitable nature, properly the subject of the jurisdiction of the court of equity. The question intended to be raised manifestly concerns the title to the lands. For if that title, as it existed in Nancy P. Woglom and Elizabeth Martin at the time of the sale for taxes, was devested and has come to Anna M. Kant, it is clear that complainant and the other heirs-at-law have no title to the lands. But if Anna M. Kant acquired the title by fraud, a court of equity may avoid the transaction, or may decree that the title acquired by her enured to the benefit of Nancy P. Woglom and Elizabeth Martin in their lifetime, and to their heirs-at-law since their decease. If either relief can be granted, it is obvious that the heirs-at-law may assert their title to the lands by descent and claim a partition thereof among them.

The question, in this aspect, is an equitable one, and upon the settled doctrine of the cases cited it may properly be raised in a case in which partition is also sought.

But the contention of the demurrants that the bill is lacking in equity is more formidable. The argument is that upon the statements of the bill the title of Elizabeth Martin and Nancy P. Woglom was devested in their lifetime by the tax sale, and

that their heirs-at-law acquired no title by descent, and that unless by further statements a case is made for equitable relief, there can be no decree avoiding the tax title or declaring that Anna M. Kant holds the same for the benefit of the heirs-at-law.

In support of the bill it is first claimed that the acquisition by Anna M. Kant of the tax title to the lands was the acquisition of one who was charged with a duty toward the prospective heirs-at-law of the then owners, and that, being thus charged, her purchase enured to the benefit of all those heirs-at-law.

Where there is a title to lands in joint tenancy or in common it is undoubtedly true that the acquisition of a tax claim against the lands by one of the parties in interest will enure to the benefit of all interested upon their contributing their portion of the burden.

But in this case the sale of the lands for taxes and the purchase by Seaman from the city and the conveyance by Seaman to Anna M. Kant all took place during the lifetime of Nancy P. Woglom and Elizabeth Martin. They alone had any interest in the lands, and they alone had any right to redeem them from the tax sale. Anna M. Kant had no interest in the lands, except what she acquired by her conveyance from Seaman. Neither the complainant nor the other parties had any interest. That she and they may have expected to be the heirs of Nancy P. Woglom and Elizabeth Martin, upon their respective deaths, intestate, created no relation between them that charged any one of them with any duty toward the others. The bill, so far as it depends upon a suggested relation between the expectant heirs during the lifetime of the owners, presents no case for relief.

But, in behalf of complainant it is further urged that the bill, by apt and sufficient statements, discloses such fraudulent conduct on the part of Anna M. Kant, directed to the then owners of said lands, as would justify them, if now alive, in avoiding the tax title acquired by her, or subjecting it in her hands, to redemption. If Nancy P. Woglom and Elizabeth Martin were now living and could obtain such relief, I think their heirs-at-law may assert their right to such relief.

It is proper to observe that the statements of the bill are

vague and lacking in certainty. Upon its allegations, and in the absence of any contradictory statements, it must be inferred that there was a legal and effective imposition of taxes upon the lands in question, for which the law permitted a sale thereof, and that the sale alleged was properly made, and that the title was properly acquired by one of the officers of the city, and for the use and protection of the city. The law permits a title thus acquired to be assigned to a purchaser from the city, and permits the city or its assignee to cut off the rights of owners by notice to redeem and the failure of the owners to redeem.

It thus appears that the lands and rights of the two owners therein were subjected to taxes and to a sale therefor, and that upon the sale the title was acquired by or for the city. For like reasons it must be inferred that notice to redeem was given to the owners and that they failed to redeem.

The question thereon is whether the bill discloses facts which, if established by proof, will support the charge against Anna M. Kant of fraudulently acquiring the city's title by collusion with Seaman and by the medium of the city's transfer to him and his transfer to her. A general charge of fraud is not sufficient, but the facts constituting the fraud must · be set .forth. *Small*.v. *Boudinot, 9 N. J. Eq. (1 Stock.) 381; Rorback* v. *Dorsheimer, 25 N. J. Eq. (10 C. E. Gr.) 516; Stover* v. *Reading, 29 N. J. Eq. (2 Stew.) 152; Bergen* v. *Porpoise Fishing Co., 42 N. J. Eq. (15 Stew.) 397; Smith* v. *Wood, 42 N. J. Eq. (15 Stew.) 563; S. C., 44 N. J. Eq. (17 Stew.) 603.*

At the time of the tax sale Elizabeth Martin was the owner of an undivided one-sixth in fee, and was tenant for life of the undivided five-sixths thereof. Primarily she was bound to pay the taxes. Not having paid them, any person might purchase at a tax sale without incurring any obligation to her, unless such conduct was fraudulent. It is not pretended that Anna M. Kant had any confidential relation with Elizabeth Martin. The only facts relied on are the relationship between them of aunt and niece, the advanced age of the owner and her infirmity. These facts might raise suspicion if the title to the lands in question had been procured from her. But no inference of fraud or unfairness can be raised as to a purchase from a city

official of a tax title already acquired for the city by reason of any of the facts thus disclosed.

Nancy P. Woglom, at the time of the tax sale, was the owner in remainder in fee of the undivided five-sixths of the land. She therefore had an interest to pay the taxes in order to preserve her title. Is there a sustainable charge of fraud in the purchase by Anna M. Kant and Seaman of the title which the city acquired by the tax sale?

The only facts stated are the great age of Nancy P. Woglom, her infirmity; that she was the mother of Anna M. Kant, and lived with her in the same family, and that the service upon her of the notice to redeem was in the presence of Anna M. Kant.

Upon the allegations on this subject, in the absence of any contradictory statement, I think another inference is here required, and that is that Anna M. Kant made use of her own money in the purchase by Seaman from the city, and in the purchase by her from Seaman. If it had been alleged that she used the money of her mother, or that her mother had money to apply to the payment of these taxes, and Anna concealed the necessity for their payment and then purchased the tax title, a different question would have been presented. If it had been disclosed that Anna M. Kant failed in any mode in a duty she owed her mother when the performance of such duty might be effective to preserve her mother's title, another question would arise. But on the only facts, the existence of taxes, the sale for taxes and the notice to redeem, I perceive no justifiable inference of any duty devolving upon Anna M. Kant to use her own money to buy the title for her mother and to take and hold the title for her protection and the protection of her heirs-at-law. The question is not whether a daughter might be willing to use her own money to preserve her mother's title for her and for her heirs-at-law, but whether any duty required such conduct. It seems to me that the bill discloses no such duty, and therefore that the charges of fraud are entirely ineffective.

If this is so, it is obvious that the whole fabric of the bill fails, for the rights of the complainant and the other parties as

heirs-at-law of Elizabeth Martin and Nancy P. Woglom depend upon establishing their title as not affected by the tax sale.

The result is that the demurrer must be sustained and the bill dismissed.